**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN CAPITAL BANK | ) | |
| & TRUST, an Illinois state chartered bank, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01170 |
| | ) | |
| | ) | Honorable Charles P. Kocoras |
| KEITH BARKET, an individual; | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

COMES NOW Defendant Keith Barket ("Defendant"), by his undersigned counsel, and for his Answer to Plaintiff Metropolitan Capital Bank & Trust's First Amended Complaint herein, states as follows:

1.      Defendant Keith Barket (hereinafter "Keith Barket," "Guarantor," or "Defendant") has failed and refused to honor his contractual obligations to the Bank under his written Guaranty of payment of a certain promissory note in the principal amount of $4,000,000 that Wellstel, LLC ("Borrower") executed and delivered in favor of the Bank ("Term Note A").

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 1.

2.      As of April 30, 2018, the Bank loaned $4,000,000 to Borrower, the repayment of which was governed by Term Note A.

**ANSWER**:  Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of those allegations and, therefore, denies the same.

- 1 -

3.      As of June 17, 2022, effective as of May 24, 2022, Keith Barket executed and delivered in favor of the Bank a Guaranty (the "Guaranty") under which he unconditionally guaranteed the full and timely payment of Borrower's Liabilities, which included, among other things, the amounts due and owing to the Bank under Term Note A.

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent that a response is required, Defendant admits execution of a document provided by the Bank on or about June 17, 2022, but denies each and every other allegation in this paragraph not specifically admitted.

4.      The Borrower defaulted on the Loan by, among other things, failing to pay the amounts due under Term Note A upon its maturity on August 24, 2024.

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent that a response is required, Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of those allegations and, therefore, denies the same.

5.      Although the Bank issued notices of default to the Borrower and Guarantor, and sent a demand for payment to Keith Barket, Keith Barket has failed and refused to make payment.

**ANSWER**:  Defendant admits that he has not made payments to the Bank, but denies any obligation to do so and denies each and every other allegation in this paragraph not specifically admitted.

6.      By this action, the Bank seeks legal relief in the form of all compensatory and consequential damages to which it is entitled arising from Keith Barket's breach of his Guaranty.

**ANSWER**: Defendant admits that the Bank seeks relief in this action, but denies each and every other allegation in this paragraph not specifically admitted. Defendant specifically denies that the Bank is entitled to the relief requested herein.

7.      The Bank is an Illinois state-chartered bank maintaining a principal place of business at 9 E. Ontario Street, Chicago, Illinois 60611.  The Bank is the owner and holder of the loan documents that are the subject of its claims against the Guarantor.

**ANSWER**: Upon information and belief, Defendant admits that the Bank is the owner and holder of the loan documents, but denies each and every other allegation in this paragraph not specifically admitted.

8.      Keith Barket is an adult individual who, upon information and belief, maintains a business or residence address at 720 Olive Street, Suite 1630, St. Louis, Missouri 63101.

**ANSWER**: Admitted.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The action involves a matter in controversy that exceeds the sum of $75,000.00, exclusive of interest and costs, between citizens of different states (Plaintiff being a citizen of Illinois, on one hand, and Defendant being a citizen of Missouri, on the other hand). This Court also has personal jurisdiction over Keith Barket for the Bank's claim for breach of his Guaranty because (a) Keith Barket engaged in significant communications into and contact with Illinois through his contact with and negotiations with the Bank regarding the Guaranty, and (b) Section 13.B of the Guaranty provides that the Bank and Keith Barket "IRREVOCABLY AGREE, AND HEREBY CONSENT AND SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, WITH REGARD TO

- 3 -

4932-3347-4851, v. 7

ANY LITIGATION, ACTIONS OR PROCEEDINGS ARISING FROM, RELATING TO OR IN CONNECTION WITH BORROWER'S LIABILITIES, GUARANTOR'S, [AND] THIS GUARANTY . . ." (Capitalization in original).

**ANSWER**: Defendant admits that Plaintiff purports to establish the Court's jurisdiction herein, but denies each and every other allegation in this paragraph not specifically admitted. Further answering, Defendant states that the Guaranty is the best evidence of the terms set forth therein.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1441(a). The Bank originally commenced this action in the Illinois Circuit Court of Cook County (which is embraced by the Eastern Division of the U.S. District Court for the Northern District of Illinois, *see* 28 U.S.C. § 93(a)(1)), and Defendant timely removed this action to this Court on February 3, 2025 (*see* ECF No. 1). A substantial part of the events or omissions giving rise to the claim in this action occurred in the Northern District of Illinois, Eastern Division. Furthermore, Section 13.B of the Guaranty provides that "GUARANTOR HEREBY WAIVES ANY RIGHT GUARANTOR MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION, ACTIONS OR PROCEEDINGS FILED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION."  (Capitalization in original).

**ANSWER**: Defendant admits that Plaintiff purports to establish venue in this district and that Defendant timely removed this action to this Court, but denies each and every other allegation in this paragraph not specifically admitted.  Further answering, Defendant states that the Guaranty is the best evidence of the terms set forth herein.

4932-3347-4851, v. 7

11.     As of April 30, 2018, the Bank, Borrower and two other guarantors, CP Wellstel, LLC and Solomon Barket, entered into a Loan and Security Agreement (hereinafter, "Loan Agreement") under which the Bank loaned Borrower $4,000,000 subject to certain repayment terms and contractual obligations set forth therein (hereinafter, "the Loan").   A copy of the Loan Agreement is attached as **Exhibit A**.

**ANSWER**:  Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of those allegations and, therefore, denies the same.

12.     To evidence its obligation to repay the Loan, as of April 30, 2018, the Borrower executed and delivered Term Note A in the principal amount of $4,000,000 to the Bank.   A copy of the Term Note A is attached as **Exhibit B**.

**ANSWER**:  Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of those allegations and, therefore, denies the same.

13.     The Term Note A provides that the principal portion of the Loan shall be due and payable in full on or before the "Term Loan A Maturity Date," which was defined in the Loan and Security Agreement as July 30, 2019. (Ex. B, Term Note A at 1; *see also* Ex. A, Loan Agreement at 9 (defining "Term Loan A Maturity Date")).

**ANSWER**:  The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

14.     The Term Note A further provides that "[i]nterest on the principal of this Note shall be payable by Borrower to Lender in arrears for the prior calendar month on the first day of each following month and on the Term Loan A Maturity Date at a[] per annum interest rate equal to the 'Prime Rate' plus the 'Prime Rate Margin', but in no event lower than an interest rate floor equal

- 5 -

to eight and one half of one percent (8.50%), until the date such Loan is paid in full, as further described in Section 2.3 of the Loan Agreement." (Ex. B, Term Note A at 1).

**ANSWER**: The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

15. The Term Note A also states that "[u]pon maturity or an Event of Default, whichever is the first to occur, interest shall accrue upon the outstanding Liabilities at the Default Rate." (Ex. B, Term Note A at 2). The Term Note A defines Liabilities as "any principal, accrued interest or any other sum due from Borrower to Lender pursuant to this Note and the Loan Agreement . . ." (Ex. B, Term Note A at 1).

**ANSWER**: The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

16. Section 1.1 of the Loan Agreement defines "Default Rate" as "five percent (5.0%) per annum in excess of the otherwise applicable rate for such Loan . . ." (Ex. A, Loan Agreement at 4).

**ANSWER**: The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

17. The Term Note A further provides that "[i]f any payment required under this Note is ten (10) days or more late, Borrower will be charged five percent (5.0%) of the regularly scheduled payment or Seventy-Five and no/100 Dollars ($75.00), whichever is greater." (Ex. B, Term Note A at 2).

- 6 -

**ANSWER**:  The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

18.     Between March 4, 2020 and July 26, 2024, Lender and Borrower, and other parties, entered into a series of written modifications of the Loan Agreement and Term Note A, which, collectively, extended the Term Loan A Maturity Date to August 24, 2024.  Copies of these loan modifications are attached collectively as **Exhibit C**.

**ANSWER**:  This paragraph sets forth legal conclusion and argument to which no response is required.  To the extent that a response is required, Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of these allegations and, therefore, denies the same.

19.     Contemporaneous with the execution of the sixth written modification of the Loan, on June 17, 2022, but effective as of May 24, 2022, Keith Barket executed and delivered the Guaranty in connection with the Borrower's and Keith Barket's request that the Bank further extend the Term Loan A Maturity Date. A copy of the Guaranty is attached as **Exhibit D**.

**ANSWER**:  Defendant admits that he executed Exhibit D on or about June 17, 2022, but denies each and every other allegation in this paragraph not specifically admitted.  Defendant specifically denies that he requested an extension of the loan.

20.     In Section 1 of his Guaranty, Keith Barket acknowledged and agreed that the Bank would grant the Borrower a further extension of the Term Loan A Maturity Date to August 24, 2024 (which, among other things, was defined in the Guaranty as "Additional Financial Accommodations") "provided, among other things, that Guarantor executes and delivers this Guaranty to Lender."

4932-3347-4851, v. 7

**ANSWER**: The documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

21.     In Section 1.D of his Guaranty, Keith Barket acknowledged and agreed that "(i) Guarantor has a financial interest in Borrower and is benefitted by the Additional Financial Accommodations made by Lender to Borrower, (ii) Guarantor's execution and delivery of this Guaranty is a material inducement to Lender providing the Additional Financial Accommodations to Borrower, and (iii) without this Guaranty, Lender would not have provided the Additional Financial Accommodations to Borrower."

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

22.     In Section 3.A of the Guaranty, Keith Barket made the following guaranties/agreements:

> Guarantor hereby (i) unconditionally guaranties the full and timely payment and performance of Borrower's Liabilities when due or declared due, whether by acceleration, maturity or otherwise; (ii) agrees to pay all costs, expenses and fees, including, but not limited to, attorneys' fees, incurred by Lender in connection with this Guaranty, Guarantor's Liabilities or any collateral or security securing Guarantor's Liabilities; and (iii) agrees to pay to Lender the amount of any payments made to Lender in full or partial satisfaction of Borrower's Liabilities, and which are subsequently invalidated, declared to be preferential or fraudulent, set aside or required to be repaid by Lender to Borrower, a trustee, a receiver or any other party under the United States Bankruptcy Code or any similar federal, state or local law, statute or regulation.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent a response is required, the documents referred to in this paragraph are the

best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

23.     The Bank and Keith Barket agreed in Section 3.B of the Guaranty that

> This Guaranty and the full and timely payment of Borrower's Liabilities by Guarantor pursuant to this Guaranty shall be a continuing, absolute and unconditional guaranty of payment and not of collection, irrespective of (i) the validity or enforceability of any instrument, agreement or document evidencing all or any part of Borrower's Liabilities; (ii) the absence of any attempt to collect or enforce Borrower's Liabilities from or against Borrower or any other guarantor of Borrower's Liabilities . . . and the absence of any such attempt shall in no way preclude or be a condition precedent to proceeding against Guarantor . . . (vi) any other fact, event, act, omission or circumstance which might otherwise constitute a legal or equitable discharge of liability or performance by Guarantor.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

24.     The Bank and Keith Barket agreed in Section 3.C of the Guaranty that  "Lender shall not be required or obligated to (i) take any action to collect from, or to file any claim of any kind against, Borrower, any other guarantor or any other person or entity liable, jointly or severally, for the full and timely performance or payment of any of Borrower's Liabilities, prior to pursuing any rights or remedies Lender may have against Guarantor; [or] (ii) take any steps to protect, enforce, take possession of, perfect any interest in, foreclose or realize on any collateral or security, . . ."

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

4932-3347-4851, v. 7

25.     Section 4 of the Guaranty is entitled "**Waivers**."  In Section 4.A, Keith Barket "unconditionally and irrevocably waives each and every defense which would otherwise impair, restrict, diminish or affect any of Guarantor's Liabilities. Without limiting the foregoing, Lender shall have the exclusive right from time to time without impairing, restricting, diminishing or affecting any of Guarantor's Liabilities, and without notice of any kind to Guarantor,  to (i) provide additional loans, extensions of credit and other financial accommodations to Borrower; [and] (ii) renew, extend, accelerate, modify or otherwise changed the terms of any of Borrower's Liabilities, or any instrument, agreement or document between Lender and Borrower . . ."

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

26.     Under Section 8 of the Guaranty, Keith Barket could terminate the Guaranty only by giving seven days advance written notice in the manner and to the persons and address set forth in Section 9 of the Guaranty.  Section 8 further provided, however, that "[s]uch notice of termination . . . shall not release or affect any of Guarantor's Liabilities existing as of the effective date of such termination."

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

27.     Keith Barket did not terminate his Guaranty in the manner required by Section 9 of the Guaranty before the Borrower breached Term Note A by failing to make payment on the

maturity date of the Loan, which renders Keith Barket fully and unconditionally responsible for all sums due and owing under the Term Note A, plus costs, expenses and legal fees.

> **ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or that is not specifically admitted.

28. Section 2.B of the Guaranty defines an Event of Default as including "the occurrence of any one of the following events: (i) Guarantor fails or neglects to perform, keep or observe any term, provision, condition, warranty, representation or covenant contained in this Guaranty or any other agreement, document or instrument executed and delivered by Guarantors to Lender . . . (xi) a breach, default or event of default occurs under any agreement, document or instrument executed and delivered by Borrower or any other guarantor or obligor of the Borrower's Liabilities to Lender, and such breach, default or event of default is not cured within the applicable grace or cure period, if any."

> **ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

29. Section 7 of the Guaranty, entitled "**Remedies Upon a Default**," provides in pertinent part:

> Upon the occurrence of an Event of Default, Guarantor's Liabilities shall be immediately due and payable by Guarantor, whether or not Borrower's Liabilities are then due and payable or declared due and payable, and Lender may, in its sole discretion, exercise any of its rights or remedies provided in this Guaranty, at law, in equity or otherwise. . . .

- 11 -

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every allegation in this paragraph that is inconsistent with the specific language or not specifically admitted.

30.     The Borrower defaulted under the Note by, among other things, failing to make payment of the Loan on the amended Term Loan A Maturity Date of August 24, 2024 or any date thereafter.

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of those allegations and, therefore, denies the same.

31.     On December 17, 2024, the Bank delivered written notice of default to the Borrower and Guarantor, among others, and it delivered a demand for payment to the Guarantor. Notwithstanding that written notice and the demand, the Guarantor has failed and refused to make payment of the sums due and owing under the Guaranty.

**ANSWER**:  This paragraph sets forth legal conclusions and argument to which no response is required.  To the extent a response is required, the documents referred to in this paragraph are the best evidence of the terms set forth therein, and Defendant denies each and every other allegation that is inconsistent with the specific language or not specifically admitted.

## <u>COUNT I</u>

32.     Plaintiff incorporates and realleges by reference paragraphs 1 through 31 as paragraph 32 of this Count.

4932-3347-4851, v. 7

**ANSWER**: Defendant incorporates and realleges by reference its responses to Paragraphs 1 through 31 as if fully set forth herein.

33.     Keith Barket is a guarantor of the Borrower's Liabilities based upon his Guaranty under which he unconditionally guaranteed the full and timely payment and performance of the Borrower's obligations under the Term Note A and Loan Agreement, including, but not limited to, the payment of the Loan on the amended Term Loan A Maturity Date of August 24, 2024.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 33.

34.     The Guaranty is a legally valid, binding and enforceable contract.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 34.

35.     The Bank fully performed its obligations under the Loan Agreement by making the Loan. It also performed all of its duties and obligations, and fulfilled any conditions precedent required by law and all the governing documents, which have never been assigned, transferred, hypothecated to, or lawfully seized by, any person or entity.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent that a response is required, Defendant lacks sufficient information or knowledge of the facts alleged in this paragraph to form a belief as to the truth of these allegations and, therefore, denies the same.

36.     Pursuant to the Guaranty, Keith Barket is liable for all amounts due and owing to the Bank from the Borrower, including, but not limited to, outstanding principal, accrued interest,

default interest, late charges, attorneys' fees, and both court and collection costs incurred by the Bank in its efforts to collect the amounts due and owing.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 36.

37. The Bank continues to be damaged by Keith Barket's breach of his Guaranty in an amount not less than $4,357,431.15 as of December 27, 2024, and additional late charges and default interest accruing thereafter, and its attorneys' fees and costs incurred collecting on the Loan Agreement, Term Note A and Guaranty.

**ANSWER**: This paragraph sets forth legal conclusions and argument to which no response is required. To the extent that a response is required, Defendant denies the allegations set forth in Paragraph 37.

WHEREFORE, having fully answered Plaintiff's First Amended Complaint, Defendant Keith Barket prays that this Court dismiss Plaintiff's Complaint with prejudice, award Defendant his attorneys' fees and costs incurred herein, and for such other and further relief as this Court deems just and proper under the circumstances.

## <u>AFFIRMATIVE AND ADDITIONAL DEFENSES</u>

1. Defendant expressly reserves the right to seek leave of the Court to include any additional defenses which may become known during the course of this litigation.

2. Plaintiff's claims fail and/or are barred by the doctrine of waiver. *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference. Accordingly, Plaintiff has waived any claim that the Guaranty continued after November 24, 2022.

4932-3347-4851, v. 7

3.      Plaintiff's claims fail and/or are barred by the doctrine of estoppel.  *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference. Defendant detrimentally relied upon Plaintiff's statements, representations, actions and inactions, such that Plaintiff is estopped from claiming that the Guaranty continued after November 24, 2022.

4.      Plaintiff's claims fail and/or are barred by the doctrine of laches.  *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference.  Plaintiff unreasonably delayed in asserting its claim that the Guaranty continued beyond November 24, 2022, and Defendant detrimentally relied upon Plaintiff's statements, representations, actions and inactions in this regard.

5.      Plaintiff's claims fail and/or are barred by the doctrine of unclean hands.  *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference. Because Plaintiff has unclean hands, Plaintiff cannot enforce the Guaranty herein.

6.      Plaintiff's claims fail and/or barred as a result of Defendant's fraudulent misrepresentations and inducement to Defendant to execute the Guaranty.  *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference.  Plaintiff made false statements of material fact with knowledge or belief that the statements were false with the intent to induce Defendant to execute the Guaranty.  Defendant justifiably relied upon the truth of the statements.  Accordingly, the Guaranty is void or voidable.

7.      Plaintiff's claims fail and/or barred as a result of Defendant's negligent misrepresentations and inducement to Defendant to execute the Guaranty.  *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference.  Plaintiff made false statements of material fact with and was careless or negligent in ascertaining the truth of the

4932-3347-4851, v. 7

statements with the intent to induce Defendant to execute the Guaranty. Defendant relied upon the truth of the statements and executed the Guaranty. Accordingly, the Guaranty is void or voidable.

8. The contract is void or voidable based upon Defendant's mistake and exercise of reasonable care. *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference. Based upon Defendant's mistake, the Guaranty should be rescinded.

9. The contract is void or voidable based upon the parties' mutual mistake. *See* facts set forth in Defendant's Counterclaim, filed herewith and incorporated herein by reference. The parties agreed that Defendant's guaranty would be limited to two 90-day periods expiring on November 24, 2022, and the language of the Guaranty varies from the parties' agreement. Based upon the parties' mutual mistake, the Guaranty should be rescinded.

WHEREFORE, having fully answered Plaintiff's First Amended Complaint, Defendant Keith Barket prays this Court dismiss Plaintiff's Complaint with prejudice, award Defendant Keith Barket his attorneys' fees and costs incurred herein, and for such other and further relief as this Court deems just and proper under the circumstances.

4932-3347-4851, v. 7

## COUNTERCLAIM

COMES NOW Defendant/Counterclaim Plaintiff Keith Barket ("Mr. Barket"), for his Counterclaim against Plaintiff/Counterclaim Defendant Metropolitan Bank & Trust ("the Bank"), states:

1. Mr. Barket is an individual who resides in and is a citizen of Missouri.

2. Bank asserts in its First Amended Complaint that it maintains its principal place of business in and is a citizen of Illinois.

3. This Court has subject matter jurisdiction and venue over this Counterclaim pursuant to Rule 13(a)(1)(A) or 13(b) of the Federal Rules of Civil Procedure, contractual exclusive jurisdiction and venue provisions, and 28 U.S.C. § 1332 in that this is a matter between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. Bank alleges in its First Amended Complaint that it loaned $4,000,000 to Wellstel, LLC ("Borrower") on April 30. 2018 and extended the maturity date of the loan several times, including an extension expiring on or about August 24, 2022.

5. In June, 2022, prior to the August 24, 2022 expiration of the loan extension, the Bank was experiencing regulatory pressures for reasons including insufficient security for its loans. Richard Keneman, an official of the Bank, told Sol Barket, a principal of the Borrower and guarantor on the loan, that the liquidity of Sol Barket had fallen, and the Bank was concerned that the regulators could change the classification of the loan and adversely impact the Bank's ability to lend.

6. Sol Barket is the son of Mr. Barket.

- 17 -

4932-3347-4851, v. 7

7.      Mr. Keneman requested that Sol Barket do the Bank a "favor" by asking his father to co-guarantee the loan.

8.      Shortly thereafter, Mr. Keneman contacted Mr. Barket directly to follow up on his request to Sol Barket.  Mr. Keneman requested that Mr. Barket co-guarantee the loan through the August 24, 2022 maturity date.  Mr. Barket agreed to do so on the express condition that his guarantee would expire on the August 24, 2022 maturity date.

9.      Mr. Keneman agreed to Mr. Barket's condition and sent to Mr. Barket a document denominated Guaranty which is marked for identification as **Exhibit 1** hereto (the "Guaranty"), attached hereto and incorporated herein.  Mr. Keneman represented to Mr. Barket that the Guaranty was for a short-term ending on August 24, 2022, and Mr. Barket executed the Guaranty on June 17, 2022 in reliance on Mr. Keneman's representations.

10.     The loan was not paid off on August 24, 2022, and the Bank proposed a 90-day extension of the maturity date to November 24, 2022.

11.     Mr. Keneman requested that Mr. Barket extend his guaranty for the additional 90-day extension.  Mr. Barket responded to Mr. Keneman in **Exhibit 2**, attached hereto and incorporated herein, that the Bank was authorized "to keep me on the existing loan for another 90 days.  Otherwise please accept this e-mail as me officially withdrawing as a co-guarantor moving forward."

12.     Neither Mr. Keneman, nor any other representative of the Bank disputed or otherwise objected to Mr. Barket's assertion that the Guaranty was only applicable until August 24, 2022, and Mr. Barket's guaranty was extended until November 24, 2022.

13.     On January 18, 2023, Mr. Barket corresponded to Mr. Keneman by email marked as **Exhibit 3**, attached hereto and incorporated herein.  In Exhibit 3, Mr. Barket stated that his

4932-3347-4851, v. 7

guarantee was "a short-term guarantee of 90 days" and that he "extended another 90 days which has expired," as of November 24, 2022.

14.     Neither Mr. Keneman, nor any other representative of the Bank disputed or otherwise objected to Mr. Barket's assertions in Exhibit 3.  In addition, upon receipt of Exhibit 3, the Bank removed Mr. Barket's signature line as guarantor from subsequent loan modification extension agreements, in compliance and consistent with Mr. Barket's assertions in Exhibit 3, and discontinued sending the extension agreements to Mr. Barket.

15.     On or about November 1, 2024, in direct conflict with the Bank's prior conduct and representations, Mr. Keneman advised Mr. Barket for the first time that it was the Bank's position that the Guaranty was still in force and effect and was not a short-term guaranty for two periods of 90 days each, expiring on November 24, 2022.

16.     Mr. Barket rejected the Bank's position in correspondence dated November 4, 2024, a copy of which is attached hereto as **Exhibit 4** and incorporated herein.

## COUNT I
### (Request for Declaratory Judgment)

17.     Mr. Barket restates and realleges Paragraphs 1 through 16 above as if fully set forth herein by this reference.

18.     Pursuant to 735 ILCS 5/2-701(a), there is an actual controversy between the parties as to the construction and validity of the Guaranty, which is a contract or other written instrument within the meaning of the statute.

19.     Mr. Barket asserts that the Guaranty is void or voidable for the reasons set forth herein and in accord with Illinois law.  Among other things, the Bank engaged in fraudulent and/or negligent misrepresentations and inducements with respect to the Guaranty as set forth above and/or there was a mistake with respect to the Guaranty such that the Guaranty is void or voidable.

- 19 -

20.     Mr. Barket has a legal tangible interest in the controversy and has standing to bring this claim.

21.     The Bank has an adverse interest.

22.     The controversy is justiciable and ripe for the Court's declaration of rights.

WHEREFORE, Defendant/Counterclaim Plaintiff Keith Barket prays for the Court to declare that the Guaranty is void or voidable and rescind the same, to award Keith Barket his costs and attorneys' fees herein, and for such other and further relief as to the Court may deem just and proper.

## COUNT II
### (Reformation of Guaranty)

23.     Except to the extent inconsistent therewith, Mr. Barket restates and realleges Paragraphs 1 through 22 above as if fully set forth herein by this reference.

24.     At all relevant times, the parties intended that the Guaranty be a short-term 90-day guaranty, that was extended for one 90-day period, expiring on November 24, 2022.

25.     To the extent that the Guaranty does not memorialize that it was a 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022 as agreed to by the parties, this resulted from a mutual mistake, such that the Guaranty fails to accurately set forth terms of actual agreement and/or fails to incorporate the true prior intentions of parties.

26.     Mr. Barket seeks reformation of the Guaranty to reflect the parties' true agreement and intention that the Guaranty was a short term 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022.

27.     Mr. Barket has no adequate remedy at law, without reformation of the Guaranty to conform to the intentions of the parties.

4932-3347-4851, v. 7

WHEREFORE, Defendant/Counterclaim Plaintiff Keith Barket prays that the Court enter an order reforming the Guaranty as set forth herein, award Keith Barket his costs and attorneys' fees herein, and for such other and further relief as to the Court may deem just and proper.

### COUNT III
### (Recission of Guaranty)

28. Except to the extent inconsistent therewith, Mr. Barket restates and realleges Paragraphs 1 through 27 above as if fully set forth herein by this reference.

29. At all relevant times, the parties intended, and the Bank represented, that the Guaranty would be a short term 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022.

30. To the extent that the Guaranty was not drafted as a short term 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022, there was a mutual mistake of fact as to the Guaranty such that there was no meeting of the minds with respect to the same, and the Guaranty is null and void and should be rescinded.

31. Pleading in the alternative, to the extent that the Guaranty was not drafted as a short term 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022, there was a material omission, material concealment, and/or material misrepresentation and inducement on the part of the Bank as to the Bank's intentions with respect to the Guaranty such that the Guaranty is null and void and should be rescinded.

32. With respect to the material omission, concealment, and/or misrepresentation:

    a. The Bank knew its representation was false at the time that it was made or acted with ignorance of its truth;

    b. Mr. Barket had no knowledge of the falsity of this representation;

4932-3347-4851, v. 7

c. The representation was material to Mr. Barket's decision to execute the Guaranty, and Mr. Barket relied upon this representation in executing the Guaranty;

d. The Bank intended for Mr. Barket to rely upon and knew that Mr. Barket relied upon the representation, and Mr. Barket's reliance was justified and reasonable.

e. As a direct and proximate result of the Bank's material omission, material concealment, and/or material misrepresentation, to the extent that the Guaranty was not drafted as a short term 90-day guaranty that was extended for one 90-day period expiring on November 24, 2022 as agreed to by the parties, Mr. Barket will be damaged in the absence of rescission of the Guaranty.

33. Mr. Barket sought rescission of the Guaranty promptly upon learning of the Bank's position with respect to the Guaranty.

34. Accordingly, Mr. Barket seeks rescission of the Guaranty.

35. Mr. Barket has no adequate remedy at law.

WHEREFORE, Defendant/Counterclaim Plaintiff Keith Barket prays that the Court enter an order rescinding the Guaranty, awarding Mr. Barket his costs and attorneys' fees herein and for such other and further relief as to the Court may deem just and proper.

Respectfully submitted,

BY: /s/ Theresa A. Phelps
John J. Gazzoli, Jr., #0927600
(*admitted pro hac vice*)
Theresa A. Phelps, #6278236
(*admitted pro hac vice*)
**ROSENBLUM GOLDENHERSH, P.C.**

- 22 -

4932-3347-4851, v. 7

7733 Forsyth, 4th Floor
Clayton, MO   63105-1812
jgazzoli@rosenblumgoldenhersh.com
tphelps@ rosenblumgoldenhersh.com

and

Bernard A. Henry, #6292992
**RIECK AND CROTTY, PC**
161 N. Clark Street, Suite 2500
Chicago, IL 60601
bhenry@rieckcrotty.com

*Attorneys for Defendant Keith Barket*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on this 14th day of March, 2025 via operation of the Court's electronic filing system:

Clinton P. Hansen
Robert F. Rabin
Michael D. Educate
Thompson Coburn LLP
55 East Monroe St., 37th Floor
Chicago, IL 60603

/s/ Theresa A. Phelps

4932-3347-4851, v. 7