UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN CAPITAL BANK & TRUST, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) )   25 C 01170 |
| KEITH BARKET, | ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Plaintiff/Counter-Defendant Metropolitan Capital Bank & Trust's Motion for Judgment on the Pleadings on Defendant/Counter-Plaintiff Keith Barket's Counterclaims under Federal Rule of Civil Procedure 12(c) and to Strike Mr. Barket's Affirmative Defenses. For the following reasons, the Motion is granted.

## BACKGROUND

The following facts are taken from the complaint, counterclaims, and any attached written instruments. All reasonable inferences are drawn in Mr. Barket's favor.

As of April 30, 2018, Metropolitan Capital Bank & Trust ("Bank" or "Lender"), Wellstel LLC ("Wellstel" or "Borrower"), and two other guarantors, CP Wellstel, LLC

and Soloman Barket ("Sol")[1], entered into a Loan and Security Agreement ("Loan Agreement") under which the Bank loaned Wellstel $4,000,000 subject to certain repayment terms and obligations set forth therein ("Loan"). To evidence its obligation to repay the Loan, Wellstel executed Term Note A in the principal amount of $4,000,000. Term Note A states that the principal portion of the Loan shall be due and payable in full on or before the "Term Loan A Maturity Date," which the Loan Agreement defined as July 30, 2019.

Wellstel initially defaulted under the Loan Agreement because it failed to meet its liquidity requirements. Notwithstanding that default, among others, between March 4, 2020, and March 28, 2022, the Bank and Wellstel entered into a series of written modifications of the Loan Agreement and Term Note A which, collectively, extended the Term Loan A Maturity Date to May 24, 2022. In each of these Modifications, Wellstel acknowledged and agreed that it had defaulted under the Loan Agreement.

In June 2022, Richard Keneman, a Bank official, asked Sol to do the Bank a "favor" by asking his father, Mr. Barket, to co-guarantee the Loan. Shortly thereafter, Mr. Keneman followed up with Mr. Barket directly, and asked Mr. Barket to co-guarantee the Loan through an August 24, 2022 maturity date. Mr. Barket agreed to do so on the express condition that his guarantee would expire on August 24, 2022.

---

[1] Sol Barket is the son of Keith Barket.

Mr. Keneman agreed and sent Mr. Barket the Guaranty, which Mr. Barket executed in reliance on Mr. Keneman's representations.

As of June 17, 2022, but effective as of May 24, 2022, the Bank, Wellstel and Mr. Barket, among other parties, entered into a Sixth Modification of Loan Documents ("Sixth Modification"). The Sixth Modification amended the definition of "Guarantor" to include Mr. Barket and extended the Term Loan A Maturity Date to August 24, 2022. In Section 6 of the Sixth Modification, the Bank, Wellstel and Mr. Barket, among others, agreed that "[a]s consideration for the financial accommodations made pursuant to this Agreement, concurrent with the execution and delivery of this Agreement, Keith Barket has executed and delivered to Lender that certain Guaranty dated as of June 17, 2022, but effective as of the Effective Date," i.e., May 24, 2022. Dkt. # 11, Ex. C, § 6. In accordance with the Sixth Modification, Mr. Barket executed and delivered the Guaranty.

In the Guaranty, Mr. Barket acknowledged and agreed that "(i) Guarantor has a financial interest in Borrower and is benefitted by the Additional Financial Accommodations made by Lender to Borrower, (ii) Guarantor's execution and delivery of this Guaranty is a material inducement to Lender providing the Additional Financial Accommodations[2] to Borrower, and (iii) without this Guaranty, Lender would not have provided the Additional Financial Accommodations to Borrower." *Id.* ¶ 21; Ex. D,

---

[2] The Guaranty defines "Additional Financial Accommodations" as, among other things, the exten[sion of] the Term A Loan Maturity Date from May 24, 2022 to August 24, 2022." *Id.*, Ex. B, § 1.B.

3

§ 3.D. In Section 3.A of the Guaranty, he "unconditionally guarantie[d] the full and timely payment and performance of Borrower's Liabilities when due or declared due, whether by acceleration, maturity or otherwise . . . ." *Id.* ¶ 22; Ex. D, § 3.A.

Section 3.B further states that "[t]his Guaranty and the full and timely payment of Borrower's Liabilities by Guarantor pursuant to this Guaranty shall be a continuing absolute and unconditional guaranty of payment and not of collection . . . irrespective of any other fact, event, act, omission or circumstance which might otherwise constitute a legal or equitable discharge of liability or performance by Guarantor." *Id.* ¶ 23; Ex. D, § 3.B)

> Section 4.A provides in pertinent part:
>
> Guarantor unconditionally and irrevocably waives each and every defense which would otherwise impair, restrict, diminish or affect any of Guarantor's Liabilities. Without limiting the foregoing, Lender shall have the exclusive right from time to time without impairing, restricting, diminishing or affecting any of Guarantor's Liabilities, and without notice of any kind to Guarantor, to (i) provide additional loans, extensions of credit and other financial accommodations to Borrower; (ii) renew, extend, accelerate, modify or otherwise change the terms of any of Borrower's Liabilities, or any instrument, agreement or document between Lender and Borrower . . . .

*Id.* ¶ 25; Ex. D, § 4.A.

The Guaranty prohibits any oral modifications to its terms. Section 12.D specifically states that "[t]his Guaranty may not be altered, changed, amended or modified except by an agreement in writing signed by Lender and Guarantor." *Id.*, Ex. D, § 12.D. The Guaranty "may only be terminated by Guarantor giving seven (7)

4

days advance notice of such termination to Lender in accordance with Paragraph 9 hereof." *Id.*, Ex. D, § 8. Section 9 requires a notice of termination to be sent to the Bank with a copy sent to the Bank's counsel. *Id.*, Ex. D, § 9. Importantly, "[s]uch notice of termination . . . shall not release or affect any of Guarantor's Liabilities existing as of the effective date of such termination." *Id.*

The Loan was not paid off by the August 24, 2022 maturity date, so the Bank proposed a 90-day extension, to November 24, 2022. Mr. Keneman asked Mr. Barket to extend his Guaranty for the 90-day extension. Mr. Barket responded by letter, wherein Mr. Barket stated that the Bank was authorized "to keep me on the existing loan for another 90 days. Otherwise, please accept this email as me officially withdrawing as co-guarantor moving forward." Counterclaim, ¶ 11; Ex. 2. Neither Mr. Keneman nor any other Bank representative disputed or otherwise objected to Mr. Barket's assertion that the Guaranty was only applicable until August 24, 2022, and Mr. Barket's Guaranty was extended until November 24, 2022.

Accordingly, as of September 9, 2022, but effective as of August 24, 2022, the Bank, Wellstel, and Mr. Barket, among others, entered into a Seventh Modification of Loan Documents ("Seventh Modification"), which extended the Term Loan A Maturity Date to November 24, 2022. Section 10 thereof, entitled "Reaffirmation of Guaranty," provides:

> Each Guarantor hereby ratifies and affirms their respective Guaranties and agrees such Guaranty is in full force and effect following the execution and delivery of this Agreement. . . .The Guaranties continue to be the

5

> valid and binding obligations of Guarantors, enforceable in accordance with their terms and no Guarantor has any claims or defenses to the enforcement of the rights and remedies of Lender thereunder.

Dkt. # 11, Ex. C, § 10.

In January 2023, Mr. Barket emailed Mr. Keneman and advised him that "I cannot continue our arrangement any longer." Dkt. # 13, ¶ 13; Ex. 3. Mr. Barket further stated that his guarantee was "a short-term guarantee of 90 days" and that he "extended another 90 days which has expired," as of November 24, 2023. *Id.* Neither Mr. Keneman nor any other Bank representative disputed or otherwise objected to Mr. Barket's assertion. The Bank removed Mr. Barket's signature line as guarantor from subsequent loan modification extension agreements and discontinued sending those extension agreements to Mr. Barket.

Between December 20, 2022, and July 26, 2024, several additional written modifications of the Loan Agreement and Term Note A were executed which, collectively, extended the Term Loan A Maturity Date to August 24, 2024. Wellstel defaulted under the Term A Note by failing to make payment of the Loan on, before, or after August 24, 2024.

On or about November 1, 2024, Mr. Keneman advised Mr. Barket for the first time that it was the Bank's position that the Guaranty was still in force and effect and was not a short-term guaranty for two periods of 90 days each, expiring on November 24, 2022. Mr. Barket rejected the Bank's position in correspondence dated November 4, 2024.

6

On December 17, 2024, the Bank delivered written notice of default to Wellstel and Mr. Barket, among others, and delivered a demand for payment under the Guaranty. Mr. Barket has not made payment of the sums the Bank asserts are due and owing under the Guaranty.

As a result, the Bank brought this action against Mr. Barket for breach of contract. Mr. Barket asserted three Counterclaims, each of which seeks to have his Guaranty declared null and void or reformed to insert an expiration date, and eight affirmative defenses in his Answer. The three Counterclaims seek a declaratory judgment that the Guaranty is void or voidable, reformation, and rescission. The eight affirmative defenses are waiver, estoppel, laches, unclean hands, fraudulent inducement, negligent misrepresentation, and unilateral and mutual mistake. The Bank now moves to dismiss the Counterclaims and strike the affirmative defenses under Rule 12(c).

## **LEGAL STANDARD**

Rule 12(c) permits parties to move for judgment on the pleadings after pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 654 (7th Cir. 2024). That is, the Court asks whether the challenge pleading "state[s] a claim for relief that is plausible on its face." *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 609 (7th Cir. 2017); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). In deciding

7

Rule 12(c) motions, the pleadings include the complaint, answer, counterclaims, and any attached written instruments. *Citizens Ins. Co. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023). "Although we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions." *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015). The Court will enter judgment on the pleadings only if "it is beyond doubt that the nonmoving party cannot prove facts sufficient to supports its position and that the movant is entitled to relief." *Citizens Ins. Co.*, 70 F.4th at 995.

## DISCUSSION

The Bank argues that the Illinois Credit Agreements Act ("ICAA"), 815 ILCS 160/0.01 *et seq.*, and the language of the Guaranty preclude Mr. Barket from asserting a counterclaim or defending against the Bank's claim for breach of his Guaranty based on oral agreements that are not supported by a writing signed by the Bank.[3]

The ICAA requires modifications of credit agreements to be in writing and signed by both parties. Section 2 states:

> Credit agreements to be in writing. A debtor may not maintain an action or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

---

[3] The Bank states that its motion does not seek a determination that Mr. Barket did not later terminate his ongoing liability under the Guaranty by Exhibits 2 and 3 of the Counterclaim. Rather, it seeks only a ruling that Mr. Barket's alleged oral understandings and correspondence attached to his Counterclaims did not modify or otherwise change the terms of his Guaranty or his obligations thereunder, at least up to the date of his purported written termination of those obligations.

815 ILCS 160/2.

Section 3 of the ICAA further provides that "the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement" does not give rise to a claim, counterclaim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2. 815 ILCS 160/3.

### I. The Guaranty is a Credit Agreement under the ICAA

Mr. Barket first argues that the Guaranty is not a "credit agreement" under the ICAA because Mr. Barket was not a party to and did not sign the Loan Agreement, and the Bank did not sign the Guaranty. A "credit agreement" is "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards." 815 ILCS 160/1(1). Guaranties are considered "credit agreements" under the ICAA, which does not limit the definition of "credit agreement" to being a single document. *See Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1058 (1999). "[W]here a guaranty forms an integral part of a loan, it should not be viewed in isolation from the underlying loan but rather in connection with other loan documents, and thus the guaranty agreement constitutes a

9

credit agreement for purposes of the ICAA." *Household Commer. Fin. Servs. v. Suddarth*, 2002 WL 31017608, at *5, (N.D. Ill. 2002) (citing *Bank One*, 309 Ill. App. 3d at 1058); *see also Gen. Elec. Bus. Fin. Servs. v. Silverman*, 693 F. Supp. 2d 796, 803 (N.D. Ill. 2010) ("The Illinois courts regard a guaranty agreement, when set forth as a 'condition precedent' to a loan, as part of the 'comprehensive credit agreement' between the parties and therefore governed by the ICAA.").

The Court agrees with the Bank that because the Guaranty makes clear that the Bank's extension of the Loan was conditioned on its execution and delivery, it was integral to the Loan Agreement and Sixth Modification. Mr. Barket has not come forth with any authority supporting his assertion that the Guaranty was not an integral part of the Loan simply because it was executed years after the Loan Agreement in connection with a modification of the Loan extending the Loan's maturity date. The Guaranty is a credit agreement under Section 1 of the ICAA.

## II. The ICAA Bars Mr. Barker's Fraudulent Inducement and Mutual Mistake Affirmative Defenses

Mr. Barket next argues that the Guaranty is void due to fraudulent inducement or mutual mistake. In his Answer, Mr. Barket states that each of his affirmative defenses is based upon the "facts set forth in [his] Counterclaim." In the Bank's view, Mr. Barket's Counterclaim purports to allege two oral agreements with the Bank. Under the first alleged oral agreement, the Bank and Mr. Barket agreed that the Guaranty would be for a 90-day period expiring on August 24, 2022. Under a

subsequent oral agreement, the Bank and Mr. Barket agreed that the Guaranty would be extended for an additional 90-day period expiring November 24, 2022. Neither of these agreements were in writing, and consequently the ICAA bars any claims or affirmative defenses in any way related to those alleged oral agreements.

Mr. Barket, however, argues he is not alleging any subsequent agreement to modify or amend an existing agreement; he is "alleging that the original agreement, as drafted, did not accurately reflect the parties' intent and agreement to begin with, either as a result of fraudulent misrepresentations by the Bank, or as a result of mutual mistake." Dkt. # 23, at 9. Yet, earlier in his Response, he explicitly concedes he is seeking to enforce an oral agreement. *See* Dkt. # 23, at 6 ("The oral agreement which Mr. Barket seeks to enforce herein was not made 'subsequent' to any written agreement herein[.]").

But no matter how it's phrased, Mr. Barket is attempting to enforce an oral promise that the Guaranty would expire on a certain date despite the express absence of such a provision in the Guaranty he signed, and his counterclaims based on the oral promise are thus barred by the ICAA. *See DaimlerChrysler Servs. N. Am., LLC. v. N. Chi. Mktg., Inc.*, 2004 WL 741740, at *3 (N.D. Ill. 2004) (holding that the ICAA foreclosed the defendants' affirmative defense based on its allegation that it was fraudulently induced to sign guaranty by an oral promise that it would not be personally liable); *Spike Body Werks v. Byline Bankcorp, Inc.* 2021 WL 3849647, at *8 (N.D. Ill. 2021) ("Plaintiffs allege fraudulent misrepresentation and fraudulent inducement, but it

11

makes no difference. Under the statute, there is no exception for fraud."); *In re Settlers' Hous. Serv., Inc.*, 514 B.R. 258, 283 (Bankr. N.D. Ill. 2014) ("An allegedly fraudulent misrepresentation has been held to be within the scope of what is barred by the CAA"); *Silverman*, 693 F. Supp. 2d at 803 (rejecting the defendants' argument that the ICAA does not apply to bar their affirmative defense of fraudulent inducement because the defendants sought to invalidate, rather than modify, the underlying contract and stating, "[t]here is nothing in the ICAA or the corresponding case law that suggests that defenses seeking nullification of a contract are somehow treated differently than defenses seeking modification of the an agreement."); *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 225–26 (7th Cir. 1996) (holding that the ICAA barred a defense of fraudulent inducement).

Furthermore, Mr. Barker's attempt to distinguish this Court's holding in *General Electric Capital Corp. v. Donogh Homes, Inc.*, 1993 WL 524814 (N.D. Ill. 1993), because the creditor's alleged oral representations in that case were made after an underlying loan agreement, is not persuasive. This Court's ruling in no way suggested that the ICAA bars a debtor's fraud claim or defense *only if* it is based upon oral agreements that arose after the execution of the original agreement.

"A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed the contract." *N. Tr. Co. v. VIII S. Mich. Assocs.*, 276 Ill. App. 3d 355, 365–66 (1995). Because the alleged oral promises the Bank made to Mr. Barker contradict the express terms of the Guaranty,

the ICAA bars Mr. Barker's affirmative defenses and counterclaims that rely on those allegations. Therefore, Mr. Barker's affirmative defense of fraudulent inducement and related counterclaims are barred.

Mr. Barket's affirmative defense of mutual mistake fares no better. In *Hubbard Street Lofts LLC v. Inland Bank*, 2011 IL App (1st) 102640, the plaintiff claimed it had an agreement with the bank that the interest rate for a loan would be calculated at 8.000%, but the signed agreement set forth a different method for calculating the interest rate. Because the plaintiff could not show an agreement for the 8.000% interest rate in writing, the breach of oral loan agreement, Consumer Fraud Act, and common law fraud counts were barred under the ICAA. *Id.* ¶ 25 ("What *is* in writing is the Note that prescribes the 365/360 method by which to calculate the interest rate of the loan. Because Hubbard Street Lofts cannot show in writing, or in any other way for that matter, that they had an agreement with Inland Bank to apply the 8.000% interest for 365 days, this count is barred by the [ICAA]."). Similarly, in this case, Mr. Barket has not alleged the existence of a written agreement signed by both parties that the Guaranty was only valid for 90 days. While Mr. Barket alleges that no one from the Bank disagreed with or objected to his position regarding the expiration dates of the Guaranty, he does not allege that he received any written response from the Bank confirming the expiration dates.

*Schafer v. Unionbank/Central*, 2012 IL App (3d) 110008, relied on by Mr. Barker, does not compel a different result. *Schafer* involved a conversion action by

13

debtor against a bank. The Schafers contended that a bank officer mistakenly checked a box on their commercial security agreement indicating that it secured all outstanding debts the Schafers owed the bank, rather than the particular loan that gave rise to the execution of the security agreement. The Schafers claimed the bank's interest in the equipment pledged as collateral for the loan was extinguished when the loan was paid off and the equipment should not have been sold to satisfy other indebtedness to the bank that was in default. The Schafers' claim of mutual mistake of fact was supported by the affidavit of the bank's loan officer admitting his mistake.

The reviewing court concluded that the Schafers were not precluded by the ICAA from raising the validity of a credit agreement in response to *the bank's* affirmative defense to the conversion action. Subsequent courts have gone to great lengths to emphasize the narrowness of *Schafer*'s holding. *See*, *e.g.*, *RREF II BHB-IL MPP, LLC v. Edrei*, 2016 IL App (1st) 151793-U, ¶¶ 26–32 (distinguishing *Schafer* and noting "the reviewing court's obvious attempt to limit the holding of the case to those particular set of facts," and holding that the ICAA barred the defendants' affirmative defenses relating to fraud, consumer fraud, and mutual mistake).

Again, the ICAA prohibits defendants from maintaining "an action on *or in any way related to* a credit agreement unless the credit agreement is in writing." 815 ILCS 160/2 (emphases added). It "is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship," *VR Holdings, Inc. v. LaSalle Bus. Credit, Inc.,* 2002 WL 356515, at *3

14

(N.D. Ill. 2002), despite the potential for harsh results, *First Nat'l Bank in Staunton v. McBride Chevrolet, Inc.*, 267 Ill. App. 3d 367, 372–73 (1994) ("We recognize such an [broad] interpretation [of the ICAA] causes a harsh result for bank customers in some circumstances. The Act is very broadly worded, however, and dictates such a result."). Mr. Barket's counterclaims fall within the scope of the ICAA and are thus dismissed for failure to state a claim, and his affirmative defense of mutual mistake and other related affirmative defenses are stricken.

### III. Any Affirmative Defenses Not Barred by the ICAA Are Waived

To the extent that any of Mr. Barket's affirmative defenses are not barred by the ICAA, those defenses are nevertheless precluded by Section 4.A of the Guaranty, which provides that Mr. Barket "unconditionally and irrevocably waives each and every defense which would otherwise impair, restrict, diminish or affect any of Guarantor's Liabilities." Dkt. # 11, Ex. D, § 4.A. Under Illinois law, general rules of contract construction apply in interpreting the terms and conditions of a guaranty, and thus, where the terms of a guaranty are clear and unambiguous, they must be given effect as written. *Fuller Fam. Holdings, LLC v. N. Tr. Co.*, 371 Ill. App. 3d 605, 620 (2007). That principle applies even where a guaranty contains broad statements of guarantor liability, including waivers of all defenses. *Bank of Am., N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 172 (1st Dist. 2010) ("a decision by a party to contractually agree to waive all defenses is permitted under Illinois law"); *Silverman*, 693 F. Supp. 2d at 800 (guaranty agreement enforceable even if it "contains broad statements of

guarantor liability, including waivers of all defenses."); *Chem. Bank v. Paul*, 244 Ill. App. 3d 772, 781 (1993). This includes an affirmative defense of fraud. *See RBS Citizens, Nat'l Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 187 (2011) (reviewing court "would be inclined to find" that a waiver of defenses clause applied to common law fraud). A guaranty agreement, such as Mr. Barket's Guaranty in this case, that is "unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports." *Bank of Benton v. LaBuwi*, 194 Ill. App. 3d 489, 495 (1990). Mr. Barket's affirmative defenses are stricken.

## **CONCLUSION**

For the foregoing reasons, the Bank's Motion to strike and dismiss [21] is granted. Mr. Barket's counterclaims are dismissed for failure to state a claim and his affirmative defenses to the Bank's breach of contract claim are stricken. A telephonic status hearing is set for 8/5/2025 at 9:55 a.m.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 7/8/2025